**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**RUSSELL ANTONIO THOMAS**                                    **PETITIONER**

**VERSUS**                                              **NO. 1:09cv35-HSO-JMR**

**REGINA HANCOCK**                                           **RESPONDENT**

## REPORT AND RECOMMENDATION

This matter is before this Court on Petitioner Russell Thomas' Petition [1-1] for Writ of Habeas Corpus which is accompanied by a Memorandum [2-1] in Support.  The Respondent has filed a Response [10-1] to which the Petitioner filed a Traverse [13-1] in Opposition.   This Court, having been advised in the premises and having considered the entire record, including the lodged state court record, the Petition [1-1] and Memorandum [2-1] in Support, the Response [10-1], the Petitioner's Traverse [13-1] and all relevant law, finds that the Petitioner's Petition [1-1] for Writ of Habeas Corpus should be denied.

## STATEMENT OF THE CASE

The Petitioner was convicted of Armed Robbery and Burglary of a Dwelling in the Circuit Court of Harrison County, Mississippi First Judicial District and was sentenced  to serve thirty-five (35) years for armed robbery and twenty (20) years for burglary, with the sentences to run concurrently, in the custody of the Mississippi Department of Corrections on March 14, 2007. (*See* State Court Record (S.C.R.), vol. 1, 44-45.)  Subsequently, the Petitioner appealed his judgment of conviction and sentence to the Mississippi Supreme Court.  On October 9, 2008, the Mississippi Supreme Court issued a Per Curiam Affirmance affirming Petitioner's convictions and sentence. (*See* Ex. "A" Attach. Resp. [7-1].)

Thomas filed the instant Petition [1-1] for a Writ of Habeas Corpus raising the following

grounds for relief (as stated by petitioner):[1]

> Ground One: Whether the trial court erred in giving jury instructions S-1 and S-3.

> Ground Two: Whether the trial court abused its discretion in giving jury instructions and allowing certain evidence.

> Ground Three: Whether the evidence provided by the State was sufficient to support the verdicts.

> Ground Four: Whether or not petitioner was denied a fair trial by prosecutorial misconduct.

> Ground Five: Whether petitioner was denied effective assistance of counsel.
> A.  Failure to conduct any independent pre-trial investigation.
> B.  Failure to timely file a motion to suppress evidence.
> C.  Failure to interview and subpoena potential defense witnesses.
> D.  Failure to make timely objections during the course of the trial.
> E.  Failure to present mitigating evidence at sentencing hearing.

> Ground Six: The testimony of State's witnesses was inconsistent and not worthy of belief.

(*See* Pet. [1-1]; *see also* Mem. [2-1].)  Presently, the Petitioner is lawfully in the custody of Ron King, Superintendent of the South Mississippi Correctional Institution in Leakesville, Mississippi.

## ANALYSIS

To the extent that Petitioner seeks an evidentiary hearing, the Court finds that Petitioner is not entitled to an evidentiary hearing in this Court.  28 U.S.C. § 2254(e)(2) limits the authority of federal courts to hold evidentiary hearings in habeas matters.  A federal court may not grant an evidentiary hearing on claims that a habeas petitioner could have developed in state court proceedings unless several criteria are satisfied.  Either the claim must rely on a previously unavailable new rule of constitutional law, made retroactive to cases on collateral review by the

---

[1]The Court notes that Petitioner changed the order, and thus the numbering, of the grounds for relief in his Memorandum [2-1] Brief.  However, for purposes of this Report and Recommendation, the Court will use the numbering of the grounds for relief that was established in Petitioner's Petition [1-1].

Supreme Court, or rely on a factual predicate that could not have been previously discovered through the exercise of due diligence. *See* 28 U.S.C. § 2254(e)(2)(A).  Additionally, the facts underlying the claim must be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. *See* 28 U.S.C. § 2254(e)(2)(B).  Upon review of the Petitioner's arguments, this Court finds that his claims fail to satisfy either of these exceptions which would allow this Court to grant him an evidentiary hearing.

   Furthermore, the decision of whether to conduct an evidentiary hearing is left to the sound discretion of the district court. *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000).  The Fifth Circuit has also stated "that when '[t]he district court ha[s] sufficient facts before it to make an informed decision on the merits of [the habeas petitioner's] claim' it does not abuse its discretion in failing to conduct an evidentiary hearing." *Id.* (citation omitted). A federal hearing does not necessarily require live testimony.  The Fifth Circuit has "repeatedly found that a paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims." *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000).

   The Court finds that an evidentiary hearing is not necessary to determine the merit of Petitioner's claims in the instant Petition [1-1].  This Court has sufficient information before it to conduct a "paper hearing" regarding all of the Grounds raised by the Petitioner in his Petition [1-1]. The Court has before it not only the Petition [1-1] and Memorandum [2-1] in Support, but also the Respondent's Response [10-1], and the Petitioner's Traverse [13-1].   Accordingly, the Court finds that there is no need for an evidentiary hearing in this matter.

   The Respondent submits, and the Court agrees, that all of Petitioner's claims in the instant

petition were reviewed on direct appeal by the Mississippi Supreme Court and denied on the merits. Thus, these claims will be addressed under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The AEDPA amended 28 U.S.C. § 2254, which governs the standard of review for petitions for writs of habeas corpus filed by prisoners in state custody.  The AEDPA amendments apply to all cases filed after its effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).[2]  Petitioner filed his federal Petition [1-1] in this Court on January 9, 2009.  Therefore, this Court will apply § 2254, as amended by the AEDPA.

The amended version of § 2254(d) governs the standard of review and provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d) (1994 ed., Supp. III).

The United States Supreme Court, in *Williams v. Taylor*, 529 U.S. 362 (2000), explicated the level of deference required under the AEDPA amendments.  The Court made a general but important point when it stated that "§2254(d)(1) places a new constraint on the power of a federal habeas Court

---

[2]This Court notes that *Lindh* effectively overrules *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied* 520 U.S. 1107 (1997), on this point.  *Nobles v. Johnson*, 127 F.3d 409, 413 & n.4 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998);  *Green v. Johnson*, 116 F.3d 1115, 1120 n.2 (5th Cir. 1997).

to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state Court." *Id.* at 412.  More specifically, the Court addressed the two ways in which a state Court decision could be "contrary to" clearly established precedent:

> First, a state-court decision is contrary to this Court's precedent if the state Court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state Court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

*Id.* at 405.

The Court then discussed the standard set forth in the "unreasonable application" clause.  The Court explained that issues which involve a state Court's application of law to facts (i.e., mixed questions) require a federal habeas Court to utilize an analysis derived from the AEDPA's "unreasonable application" clause. *Id.* at 408-09.   The Court summarized its "unreasonable application" clause analysis as follows: "[A] federal habeas Court may grant the writ if the state Court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of that prisoner's case." *Id.* at 413;  *see also Tucker v. Johnson*, 242 f.3d 617, 621 & n.5 (5th Cir.)(quoting and following *Williams'* "unreasonable application" analysis), *cert. denied*, 533 U.S. 972 (2001).  In other words, the standard under § 2254(d)(1)'s "unreasonable application" clause is whether the state-court decision was objectively unreasonable.[3]

However, the deferential standards found in the AEDPA amendment do not apply when the

---

[3]The Court's self-professed most important point was that the term "unreasonable,"as used in the AEDPA, connotes an objective standard–i.e., "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Williams*, 529 U. S. at 409-10 (emphasis in original). *Williams* rejects the subjective analysis offered in *Drinkard*, 97 F.3d at 767-768, in favor of an objective standard. *Id.* at 410; *see also Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001)(recognizing rejection of *Drinkard's* subjective reading of the AEDPA).

state Court has rejected a claim on procedural grounds or when the claim is unexhausted.  *Valdez*

*v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).  As a threshold matter, this Court must determine

whether a given determination was "on the merits," procedurally barred, or exhausted.  *Drinkard*,

97 F.3d at 766.  "On the merits" is a term of art that refers to whether a state-court disposition was

procedural or substantive.  *Green*, 116 F.3d at 1121.  *Green v. Johnson* sets forth a three-factor test

that speaks to this issue.[4]

        In Grounds One and Two, Petitioner argues that the trial court erred in giving jury

instructions S-1 and S-3 and allowing certain evidence.  Jury instruction S-1 is an elements

instruction for the crime of armed robbery. (S.C.R. vol. 1, 29.)  It reads in relevant part that

> [i]f you find...beyond a reasonable doubt that...[Petitioner], did wilfully,
> unlawfully and feloniously take, steal and carry away...the personal property of
> John Dwayne Cook, by putting [him] in fear of immediate injury to his person, by
> the exhibition of a deadly weapon, to-wit: an ASP collapsible baton, then you
> should find the defendant, [Petitioner], guilty of Count I, Armed Robbery.

*Id.*  Jury instruction S-3 reads in relevant part:

> It is a question of fact for you to determine whether the deadly weapon,
> to wit: an ASP collapsible baton claimed to have been used was a deadly weapon
> in the manner claimed to have been used or threatened to be used in this case.
>
> A deadly weapon may be defined as any object, article or means which,
> when used as a weapon under the existing circumstances is reasonably capable
> of producing or likely to produce death or serious bodily harm to a human being
> upon whom the object, article or means is used.

(S.C.R. vol. 1, 30.)  Plaintiff argues that these two instructions were peremptory and he claims that

they instructed the jury that the baton used was indeed a deadly weapon. (Pl.'s Mem. [2-1] 30-36.)

Plaintiff asserts that the jury's fact finding duty to determine whether or not the baton was a deadly

---

[4]In making the determination whether a resolution was on the merits, a court should consider the following factors: (1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state courts' opinions suggest reliance upon procedural grounds rather than a determination of the merits. *Id.*

weapon was taken from the jury by these instructions. *Id.*

Generally, challenges to jury instructions may not form the basis for federal habeas corpus relief. *See Gilmore v. Taylor*, 113 S.Ct. 2112, 2118-19, 124 L.Ed.2d 306, 318 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71 (1991).  Habeas relief will not be granted  unless a petitioner establishes that an improper instruction rose to the level of a constitutional violation. *Taylor*, 113 S.Ct. At 2121, 124 L.Ed.2d at 322.  The Petitioner is required to show that the erroneous instruction so infected the entire trial that the subsequent conviction violates due process. *See Mayabb v. Johnson*, 168 F.3d 863 (5th Cir. 1999).  Moreover, "the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *See Hughes v. Johnson*, 191 F.3d 607, 627 (5th Cir. 1999).  Also, the Court must determine whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a "way that violates the Constitution." *Id.*

Respondent argues that Petitioner's claim is without merit.  This Court agrees.  A simple reading of the two instructions reveals that Petitioner is mistaken.  Jury instructions S-1 and S-3 clearly do not instruct the jury that an ASP baton is a deadly weapon.  Instead, the instructions, as they should, instruct the jury that use of a deadly weapon is an essential element of armed robbery, and they further direct the jury to determine whether or not the metal ASP baton alleged to have been used in Petitioner's criminal case was indeed a deadly weapon.  Petitioner directs this Court to the fact pattern in the Mississippi Court of Appeals case *Russell v. State*, 832 So.2d 551 (Miss.Ct.App. 2002), where that court reversed the trial court for allowing an instruction that instructed the jury that a stun gun was indeed a deadly weapon.  However, Petitioner's reliance on this case is ill-fated, as the jury instructions involved are not similar.  In the *Russell* case, the relevant elements jury instruction for aggravated assault read, in pertinent part, that you must find the defendant guilty if

you find that the defendant "attempt[ed] to cause serious bodily injury to [the victim]...by repeatedly shocking her with a stunn [sic] gun, a deadly weapon..." 832 So.2d at 554-55.  In said case, the jury instruction clearly stated to the jury that a stun gun was a deadly weapon.  Such is not the case in the instant matter.  In the case sub judice, jury instructions S-1 and S-3 directed the jury to determine whether or not the ASP baton used was a deadly weapon.  Thus, no relief is available to Petitioner on this claim.

Also, Petitioner argues that the trial court abused its discretion by allowing into evidence State's exhibits S-2, S-7, and S-10.  Petitioner claims that State's exhibit S-2 purports to be a photograph of blood stains on the floor in the victim's apartment. (Pet.'s Mem. [2-1] 9.)  Petitioner asserts the entry of this exhibit was cumulative and it was introduced only to prejudice the jury against him by showing more blood than was actually shed by the victim. *Id.* at 10.  Petitioner claims that State's exhibit S-7 purports to be a photograph of the victim's car keys and a gold colored metal baton lodged in a chair. (Pet.'s Mem. [2-1] 11.)  Petitioner asserts that the baton in the picture was never connected to him because it was gold colored, not black like the testimony suggested. *Id.* Lastly, Petitioner claims that State's exhibit S-10 purports to be the mugshot of his arrest on the night of the incident. *Id.* at 10.  Petitioner asserts that the photograph did not have any probative value and was only introduced to bolster the testimony of the State's witnesses. *Id.*

State evidentiary rulings, even erroneous ones, are subject to federal habeas review only if they constitute a denial of fundamental fairness under the Due Process Clause.  "The test applied to determine whether trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Rigers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United

States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  A

petitioner is thus entitled to federal habeas relief due to trial error only if such error had a substantial

and injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113

S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a
> defendant to habeas relief unless there is more than a mere reasonable possibility
> that it contributed to the verdict.  It must have had a substantial effect or influence
> in determining the verdict.  We recognize, however, that if our minds are "in virtual
> equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we
> must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-

27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, Petitioner must show

the error actually prejudiced him. *Brecht*, 507 U.S. at 637.

Even if this Court were to assume that the trial court committed error by admitting into

evidence exhibits S-2, S-7, and S-10, Petitioner must still show that the error had a substantial and

injurious effect or influence on the verdict.  The Court finds that Petitioner has failed to prove that

the jury's verdict of guilty is unreliable.  As discussed *passim*, the trial record contained several other

pieces of evidence, including eye witness testimony, of Petitioner's guilt.  Petitioner was identified

by the victim as the one who broke into his home, beat him with a metal baton, and made demands

for money.  The victim testified that three men, including Petitioner, approached his home, knocked

on his door, and asked for a man named "Bobby" as well as drugs and/or money.  Once the victim

informed them that they had the wrong residence he began to close the door, but Petitioner and

another individual wearing a bandana and carrying a gun forced their way into the home.  The victim

testified that Petitioner beat him with a metal baton and demanded money.  He also testified that the

man with the gun also beat him and demanded money.  The victim stated that he threw all the money

that he possessed towards them, three dollars ($3.00).  Officer Walker testified that upon receiving a 911 call he approached the residence and looked through the open door.  He stated that he saw Petitioner with a metal baton in his hand standing over the victim who was laying on the floor. Officer Walker further testified that he ordered Petitioner to drop the metal baton, and that Petitioner then threw the metal baton onto the recliner which was depicted in exhibit S-7. (S.C.R. vol. 2, 137-39.) Officer Walker also testified that he witnessed another suspect run into the bedroom and escape out the back of the house. *Id.* at 139.  The Court finds that Petitioner has not shown that the introduction of State's exhibits S-2, S-7, and S-10 was prejudicial and his trial would have been decided differently without the introduction.  Therefore, there is no basis for granting federal habeas relief as to Petitioner's claim.

In Grounds Three and Six, Petitioner argues that the evidence was insufficient to convict him of armed robbery and burglary and that the State's witnesses offered inconsistent testimony unworthy of belief. (*See* Pl.'s Pet. [1-1]; Pl.'s Mem. [2-1] 26.)  Specifically, Petitioner argues that there was not sufficient evidence establishing that he was in possession of the baton that was used to beat the victim.  Petitioner also argues that no evidence showed he took three dollars ($3.00) from the victim, and thus, the taking element of armed robbery was not met.  Further, Petitioner complains that medical records of the victim's injuries were not introduced at trial and that no fingerprints from the crime scene were introduced into evidence.  Petitioner also claims that the victim gave inconsistent testimony concerning how many men entered his house, where he was beaten in his house, and who broke his bedroom window.  Lastly, Petitioner claims that Jacqueline Griffith, the victim's neighbor, gave inconsistent testimony as to how long the victim had lived in the apartment and as to how many voices she heard in his apartment on the night of the incident.  Petitioner alleges that these inconsistencies   equate to false testimony.  Respondent submits that the testimony of the

prosecutions' witnesses was not inconsistent and that the jury had ample evidence to convict Petitioner of armed robbery and burglary.

A challenge to the sufficiency of the evidence can support a claim for habeas relief  if the evidence, when viewed in the light most favorable to the State, is such that no reasonable fact finder "could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);  *see also Marler v. Blackburn*, 777 F.2d 1007, 1011 (5thCir. 1985). This standard of review "preserves the integrity of the trier of fact as the weigher of the evidence." *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983). The *Jackson* standard allows the trier of fact to find the evidence sufficient to support a conviction even if "the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992).

The victim, John Cook, testified that three men, including Petitioner, forced their way into his home on July 23, 2003. (S.C.R. vol. 2, 77-81, 85-94, 108.)  According to Cook, who testified that he had lived at the residence for approximately two months, the men stated that they wanted to buy drugs from someone named "Bobby."*Id.* at 78-79, 85.  Cook testified that he informed them that he was not Bobby and that nobody named Bobby lived there. *Id.*  Cook further testified that he then began to close the door but the men forced it open, and that Petitioner swung a metal baton at him breaking his arm and injuring his torso, back and hands. *Id.* at 78-81, 97-98, 108-12.  Cook stated at trial that Petitioner demanded money from him as he beat him with the metal baton. *Id.* at 80, 91, 93-94. Also, Cook testified that one of the other men held a gun to his head, also demanded money, and then struck him in the head with the gun. *Id.* at 77-78, 81, 99-100. Cook testified that he gave them all the money he had in his pockets, three dollars ($3.00). *Id.* at 111.  Cook stated that he took the money out of his pocket, threw it on the ground, and said "you can have anything you want,

please just don't kill me." *Id.* at 93.  Cook does not know what happened to the money but notes that it was missing from his apartment. *Id.* at 111.  Also, Cook noted that he attempted to "play possum" by lying still next to his couch so that the men, including Petitioner, would stop beating him. *Id.* at 81, 84, 105.  At trial, Cook positively identified Petitioner as the one who attacked him with the metal baton. *Id.* at 108.  Jacqueline Griffith, Cook's next door neighbor, testified that at the time of the robbery she heard screaming, loud banging noises, and Cook saying "please stop."  She then called 911. *Id.* at 116.  Griffith also stated that she heard four men's voices in Cook's apartment that night, and that she believed Cook had lived there "a couple of months", but she could not accurately recall how many. *Id.* at 121.

The State also presented the testimony of the arresting officer, Keith Walker, who identified Petitioner as the man he arrested on the date in question. *Id.* at 137-39.  Officer Walker testified that he entered Cook's house on the night of the robbery and found Petitioner standing over Cook with the metal baton in his hand. *Id.* at 143-44.  Officer Walker testified that he ordered Petitioner to drop the baton and then placed him under arrest. *Id.* at 138-39.  Also, officer Walker noted that another individual fled the scene through Cook's bedroom, but he was unable to chase him because he had to hold Petitioner in custody until backup arrived. *Id.* at 138-41.

The record reflects that Petitioner did not testify at trial, nor did he offer any witnesses on his own behalf.  However, the Court notes that Petitioner's counsel cross-examined each witness presented by the prosecution.  It is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  Therefore, if there were inconsistencies in any of the testimony presented, the Court notes that defense counsel cross-examined each witness and the jury was able to assess the credibility of the testimony.  There has

been no evidence presented that any testimony presented at trial was false.  Furthermore, the Court also notes that the trial court gave an accomplice instruction, S-7, which directed the jury that if they found Petitioner did any act "which is an element" or "immediately connected with" the crime, then the jury could find him guilty as a principal. (S.C.R. vol. 1, 34.)  Mississippi law provides that accomplices or accessories to felonies be deemed and considered as a principal. *See* MISS. CODE ANN. § 97-1-3; *see also Anderson v. State*, 397 So.2d 81 (Miss. 1981) (In a prosecution for armed robbery, the defendant was properly convicted as a principal where he had aided and abetted the person who actually robbed the bank in question).  A review of the record reveals that there was more than sufficient evidence to prove, at a minimum, that Petitioner participated along with others in the armed robbery and burglary.  Accordingly, the Court finds that in view of the testimony presented at trial, taken in the light most favorable to the State, Petitioner cannot sustain an argument that no reasonable fact finder "could have found the essential elements of the crime[s] beyond a reasonable doubt." *Jackson, supra.*  Therefore, Petitioner's claims in Ground Three and Six are without merit.

        In Ground Four, Petitioner argues that he was denied a fair trial due to prosecutorial misconduct.  Petitioner claims that the State "elicit[ed] false testimony; allow[ed] false testimony to go uncorrected; testif[ied]...by leading questions, promot[ed] an uncharged crime; and misstat[ed] the facts in evidence." (Pl.'s Pet. [1-1] 11.) Specifically, Petitioner complains of Griffith's testimony concerning her observation of the injuries suffered by Cook. (Pl.'s Mem. [2-1] 13.)  Also, Petitioner claims the Prosecution suggested by leading questions that Petitioner broke out the window in Cook's bedroom and fled the scene through the window, that there was blood on the livingroom floor, and that Cook was scared during the incident. *Id.* at 14.  Lastly, Petitioner complains that throughout the trial the prosecutor discussed the uncharged criminal offense of assault. *Id.* at 15.  The

known solicitation of false testimony by the State may constitute a violation of due process. *See Giglio v. United States*, 405 U.S. 150, 153-54 (1972).  Respondent submits that Petitioner has not offered any proof of any actual prosecutorial misconduct.  The Court agrees; it finds that Petitioner's assertions are baseless and without merit.

The Court notes that Griffith, the victim's neighbor, testified that Cook visited her the night of the incident after he returned home from the hospital. (S.C.R. vol. 2, 116-17.)  She testified that she observed both of Cook's arms in splints, a swollen abdomen, bruised and red eyes, a "mushy" face, and a bloody mouth. *Id.*  Also, Cook testified that Petitioner struck him with the metal baton several times causing him a broken arm, a fractured hand, and lacerations to his legs, arms, and torso. (S.C.R. vol. 2, 79-80, 84, 108-09, 112.)  Cook testified that he visited the emergency room that night and later saw Dr. Hughes, an orthopaedic specialist, who placed his arms in casts. (S.C.R. vol. 2, 109.)  The Court notes that Petitioner did not testify or put on any evidence to contradict the evidence of Cook's injuries.

Furthermore, neither Cook nor the prosecution ever stated that Petitioner broke the bedroom window and fled out the same. (S.C.R. vol. 2, 77-113.)  The testimony revealed that two of the three men, including Petitioner, forced their way into Cook's apartment, beat him, and ransacked the apartment in search of money and/or drugs.  Cook testified that when officer Walker arrived, the perpetrator with the gun escaped through his bedroom.  Cook and officer Walker both deduced, after witnessing the suspect run into the bedroom and seeing the broken bedroom window, that the suspect with the gun broke the window and fled the scene.  The uncontradicted testimony revealed that Petitioner was caught by officer Walker standing over Cook with the metal baton in his hand in the living room.  Cook stated that the beating caused him to bleed and that he attempted to "play possum" by lying very still on the floor in the living room so the beatings would stop.  Cook testified

himself that he was "scared out of [his] mind." (S.C.R. vol. 2, 107.)  Lastly, the Court notes that it was Petitioner's counsel that referenced the crime of assault, and not the State.  In fact, it appears, by viewing Petitioner's counsel's closing arguments, that Petitioner's defense was that at most the evidence showed he was guilty of assault and not armed robbery or burglary. (S.C.R. vol. 3, 172-75.)  After reviewing the record, the Court has not found any evidence of false testimony or prosecutorial misconduct; therefore, the Court finds that Petitioner's claims in Ground Four are without merit and do not entitle him to habeas relief.

In Ground Five, the Petitioner raises ineffective assistance of counsel claims.  These claims are:

> A.  Failure to conduct any independent pre-trial investigation.
> B.  Failure to timely file a motion to suppress evidence.
> C.  Failure to interview and subpoena potential defense witnesses.
> D.  Failure to make timely objections during the course of the trial.
> E.  Failure to present mitigating evidence at sentencing hearing.

(*See* Pet. [1-1]; *see also* Mem. [2-1].)

On direct appeal, the Mississippi Supreme Court, found that the Petitioner's claims lacked merit. *See* Ex. "A" Attach. Resp. [10-2].)  The United States Supreme Court announced its two-prong test for ineffective assistance of counsel claims in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984).  The Defendant must satisfy both prongs by a preponderance of the

evidence. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.), *cert. denied*, 528 U.S. 947 (1999). If the Court finds against the Defendant on either element, then the petition for the writ may be denied on the Petitioner's ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 697.

Under the deficiency prong of the test, the defendant must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). "Our scrutiny of counsel's performance is 'highly deferential' and we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct of the counsel's perspective at the time.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Counsel's services are not evaluated in a vacuum, and all circumstances are considered in determining whether the performance was reasonable under prevailing professional standards. *Lavernia*, 845 F.2d at 498. Finally, there is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir.1986).

To prove prejudice, a defendant must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert denied* 116 S.Ct. 557 (1995); *Lockhart v. Fretwell* , 506 U.S.364, 369 (1993); *Sharp v. Johnson,* 107 F.3d 282, 286 n.9 (5th Cir. 1997). To meet the prejudice prong, a defendant must affirmatively prove and not merely allege prejudice. *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.) *cert denied*, 476 U.S. 1143 (1986). There is no constitutional entitlement to error free representation.

*Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981) *cert denied*, 456 U.S. 949 (1982).

Counsel's performance is considered deficient if "it falls below an objective standard of reasonableness" as measured by professional norms.  *Strickland*, 466 U.S. at 688.  The Court must determine whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).  In scrutinizing counsel's performance, the Court must make every effort to "eliminate the distorting effects of hindsight," and will not assume that counsel's performance is deficient merely because the Court disagrees with trial counsel's strategy.  *Id.* (citations omitted).

To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland* by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance.  *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986) (overruled on other grounds).  Furthermore, the test for federal habeas purposes is not whether the petitioner made the showing required under *Strickland*.  Instead, the test is whether the state court's decision, that the petitioner did not satisfy *Strickland*, was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his ineffective assistance of counsel claim. *See Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

The Petitioner first argues that trial counsel was ineffective in failing to conduct an independent pre-trial investigation; to call witnesses; and to timely file a motion to suppress.

Petitioner claims that if his trial counsel would have conducted an investigation, then he would have called a "Mr. Jones" as a witness. (Pet.'s Mem. [2-1] 21.)  However, Petitioner does not state what Mr. Jones' testimony would reveal.  The Court notes that Officer Walker testified that as he approached the house on the night of the incident a bystander was seen leaving the scene, who was later identified as Mr. Jones. (S.C.R. vol. 2, 135-36, 141-42.)  Officer Walker noted that the police spoke with Mr. Jones later that night. *Id.*  Also, Petitioner argues that counsel should have called Detective Harmon who would have testified to the lack of Petitioner's fingerprints in the victim's house and the fact that the metal baton used in the armed robbery was not admitted into evidence.

The Fifth Circuit has held that a petitioner who "alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Careful reflection of the record shows that Petitioner's trial attorney conducted a thorough investigation into his case.  Petitioner's trial attorney effectively cross-examined witnesses and moved for a directed verdict.  These actions on the part of Petitioner's counsel are indicative of his thorough pretrial investigation and preparation.  Furthermore, "[c]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have testified are largely speculative. [Citation omitted.] Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986); *see also Sayre v.* Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001); *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985); *Murray v. Maggie*, 736 F.2d 279, 282 (5th Cir. 1984).  The Court notes that fingerprints were not an issue in Petitioner's case.  The victim, John Cook,

testified that Petitioner beat him with the baton, and Officer Walker testified that upon entering the house he saw Petitioner standing over the victim with a metal baton in his hand; there was no evidence presented that Petitioner did not beat the victim with the baton. Petitioner did not call a single witness or put on a defense. Petitioner has in no way demonstrated how the outcome of trial would have been different had his counsel called Mr. Jones and Officer Harmon as witnesses. The Court finds that the Petitioner fails to allege with any specificity what a further investigation would have revealed or how it would have altered the outcome of the trial. Accordingly, the Court finds that Petitioner was afforded effective assistance of counsel as it relates to pretrial investigation and research.

Further, Petitioner complains that his counsel failed to file a motion to suppress and failed to make timely objections during the course of the trial. However, Plaintiff does not specify what evidence should have been suppressed, nor does he advise the court as to what testimony or evidence should have been objected to by his counsel. Respondent argues that Petitioner's claim is without merit and that attorneys are not required by the Sixth Amendment to file meritless motions. *United States v. Gibson,* 55 F.3d 173, 179 (5th Cir.1995); *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990), *see also Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."). Assuming that Petitioner asserts the photographs discussed in Ground Two should have been suppressed, the Court finds that Petitioner is not entitled to relief. As noted earlier, the photographs discussed in Ground Two, S-2, S-7 and S-10, depicted the metal baton alleged to have been used in the robbery, the living room and couch where the victim was beaten and bled out, and the mugshot of Petitioner which was used by the victim and Officer Walker to identify how Petitioner looked on the night of the robbery. Assuming, *arguendo*, that

Petitioner's trial counsel was deficient for not getting State's exhibits S-2, S-7 and S-10 excluded as evidence, Petitioner must still show that this deficiency resulted in prejudice.  As discussed *supra*, the trial record contained several other pieces of evidence of Petitioner's guilt, including eye witness testimony.  Furthermore, a review of the record reveals that Petitioner's counsel made timely and relevant objections during his trial. (S.C.R. vol. 2, 117, 132-33.)  Therefore, even if defense counsel's performance was deficient, there was no prejudice, and there is no basis for granting federal habeas relief as to Petitioner's claims.

Lastly, Petitioner complains that his counsel failed to conduct a pre-sentence investigation and present mitigating factors to the trial court at the sentencing phase. (Pl.'s Mem. [2-1] 23.) However, Petitioner fails to exhibit what defense counsel would have discovered that would have changed the outcome of the trial had he conducted a more thorough investigation. Petitioner fails to indicate what witnesses defense counsel should have called or what these witnesses' testimony would have revealed, and he fails to explain how defense counsel failed to prepare.  The only mitigating evidence that Petitioner argues could have been presented was alleged facts known to Petitioner at the time of his sentencing.  Petitioner states that he is married, gainfully employed, an asset to the community and a little league sports coach, and he claims that this incident was his first felony arrest and conviction.    *Id.*  However, the record reflects that his counsel offered some of these facts to the trial court at sentencing.  The following exchanged occurred:

| | |
|---|---|
| Trial Court: | All right.  Mr. Stewart, do you have anything to say? |
| Defense Counsel: | Judge, just remind the Court that [Petitioner] has no prior felony convictions.  I know he has a wife, a couple of children, and we just ask the Court to be as lenient as possible. |

(S.C.R. vol. 3, 187-88.)  Also, Petitioner was given an opportunity to personally tell the trial

court any additional information that he so desired, including the alleged facts known to him at the time of sentencing.

| Trial Court: | Do you have anything you want to say before I pronounce sentence? |
|---|---|
| Petitioner: | I would like to apologize to you, man, you know what I mean.  Just hanging out with the wrong crowd, I guess. I mean, I ain't a bad guy like they said I am. |

*Id.*  The Court finds that Petitioner's claim of ineffective assistance of counsel is nothing more than a conclusory allegation insufficient to entitle him to habeas relief. *See Collier v. Cockrell*, 300 F.3d 577, 587 (5th  Cir. 2002)(quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th  Cir. 2000)(citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)) ("This court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *see also United States v. Woods*, 870 F.2d 285, 288 (5th  Cir. 1989).

Based on the foregoing analysis, the Court finds that the Petitioner is not entitled to habeas relief as it relates to any of his ineffective assistance of counsel claims.  Accordingly, all of Petitioner's ineffective assistance of counsel claims contained in Ground Five should be denied.

## **CONCLUSION**

Based on the forgoing analysis, this Court finds that the Petitioner's Petition [1-1] for Writ of Habeas Corpus should be denied.  In accordance with Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party.  The District Judge at that time may accept, reject or modify in

whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the district Court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

This the ___11ᵗʰ___ day of January, 2011.


_____s/ John M. Roper, Sr._____

UNITED STATES MAGISTRATE JUDGE